**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5736-17T4

HISPANIC MULTI-PURPOSE
CENTER TITLE HOLDING
CORP.,

     Plaintiff-Respondent,

v.

PATERSON INTERNATIONAL
PRE-SCHOOL,

     Defendant-Appellant.

_____

Submitted May 28, 2019 – Decided July 17, 2019

Before Judges Mitterhoff and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. C-000121-16.

Paul E. Fernandez, attorney for appellant.

Bastarrika Soto, Gonzalez & Somohano, LLP, attorneys for respondent (Franklin G. Soto, on the brief).

PER CURIAM

This appeal arises from a rental dispute between two nonprofit organizations, plaintiff Hispanic Multi-Purpose Service Center Title Holding Company and defendant Paterson International Pre-School. Defendant has operated its preschool on plaintiff's property since 2002. Defendant claims that after their ten-year lease expired in 2012, the parties signed a second ten-year lease (renewal lease) at the same rental fee as the original one. Plaintiff disputes that the lease was renewed, asserting that the person who signed the renewal lease on its behalf had no authority to do so.

Plaintiff filed a declaratory judgment action in the Chancery Division seeking to invalidate the renewal lease. The attorney who was representing defendant (initial counsel) failed to file an answer, and as a result, plaintiff obtained a default judgment. Defendant's initial counsel also failed to appear at the ensuing proof hearing, after which the Chancery Division judge voided the renewal lease. A series of landlord-tenant proceedings were thereafter conducted in Special Civil Part, at which defendant was represented by new counsel. Those Special Civil Part proceedings resulted in plaintiff obtaining a judgment of possession.

It is especially noteworthy that at some point during the course of the on-again, off-again litigation in the Chancery Division, defendant's initial counsel

disappeared and has not been heard from. Defendant's new counsel filed a motion to vacate the Chancery judge's order invalidating the renewal lease, contending that defendant was not aware that a default judgment had been entered or that a proof hearing had been scheduled. The Chancery Division denied defendant's motion to set aside the default judgment. It is that decision from which defendant now appeals.

After giving due consideration to the complex record and unusual circumstances of this case, and in light of the prevailing legal principles, we conclude that the default judgment against defendant should have been vacated. We base this decision on two independently sufficient but factually related grounds. First, we are satisfied that defendant has demonstrated excusable neglect; it was reasonable for defendant to have relied on its initial counsel, who disappeared without answering plaintiff's declaratory judgment complaint or informing his client about the default judgment and proof hearing. Defendant also demonstrated that it has a potentially meritorious defense that should have been presented by its initial counsel.

Second, we conclude that plaintiff did not properly serve notice of the final default judgment and the proof hearing when it mailed a letter to defendant's initial counsel rather than mail notice to defendant directly in

accordance with Rule 4:43-2(b). This deviation from the prescribed manner of service was substantial in this instance because defendant's initial counsel disappeared – apparently before the letter was sent – and never informed his client about the default judgment or proof hearing.

I.

The dispute over this leasehold has a tortuous procedural history, having been litigated in two different units of the Superior Court – the General Equity Part of the Chancery Division and the Special Civil Part of the Law Division. For purposes of this opinion, we confine our summary of the procedural history and facts to events and circumstances that pertain directly to the specific issue that is now before us, that is, whether the default judgment voiding the renewal lease should be set aside to afford defendant an opportunity to litigate disputed facts.

On November 4, 2016, plaintiff filed an action in the Chancery Division for declaratory relief seeking to vacate a signed lease between plaintiff and defendant for a ten-year term beginning in June 2012.[1] The renewal lease

_____

[1] Defendant was properly served with the complaint by a process server on November 29, 2016.

document was signed by Ana Osorio, "Vice President Title Holding Corp.," and Stacy Cruz, President of Paterson International Pre-School.

At some point, the Chancery Division case was administratively terminated for failure to prosecute. Plaintiff filed a motion to reinstate the complaint on May 24, 2017, and on June 21, 2017, the Chancery Division reinstated the complaint.

On August 23, 2017, plaintiff's attorney sent a letter, via regular mail and facsimile, to defendant's initial counsel advising that the complaint had been reinstated and that plaintiff would file for default if defendant did not file an answer within thirty days. There was no response to plaintiff's warning letter, and no answer was filed. Plaintiff moved for entry of default on September 19, 2017. The court granted plaintiff's request, however, it is unclear as to the exact date when the court entered default judgment because the order is not in the parties' appendices.

Plaintiff's attorney mailed a letter dated November 3, 2017, to defendant's initial counsel, advising that the court had scheduled a proof hearing for November 9, 2017. Neither defendant's initial counsel nor an officer/ representative of the preschool appeared at that hearing. Plaintiff called one

5

witness – Sonja Rosado, the Secretary of the Board of Hispanic Multipurpose Center Title Holding Company.

Rosado testified that Ana Osorio, whose signature was on the purported renewal lease, had never been affiliated with or had a management capacity at Hispanic Multipurpose Center Title Holding Company and was not authorized to enter into the lease agreement. Rosado also testified that Osorio was the aunt of "the person who is running the Paterson International Pre School," that another tenant in the same building was renting a similar space for $11,000 per month as compared to the renewal lease rent fixed at $3,000 per month, and that no resolution authorizing the lease was brought before the Hispanic Multi-Purpose Service Center Board. Based on Rosado's testimony and the lack of opposition, the Chancery Division judge granted plaintiff's requested relief, declaring the renewal lease void. The court's order voiding the lease was issued on November 17, 2017.

After the renewal lease was invalidated, plaintiff filed a complaint in the Special Civil Part for non-payment of rent. On January 31, 2018, plaintiff's counsel sent a letter to defendant terminating the month-to-month tenancy as of February 28, 2018, and requesting that defendant sign a new lease agreement, at a higher rent, if it wished to continue leasing the premises. On May 29, 2018,

the Special Civil Part judge held a bench trial on plaintiff's complaint seeking to evict defendant as a holdover tenant. The judge ruled that plaintiff was entitled to a judgment for possession. The judge also denied plaintiff's request for a stay, pending the filing of a motion to vacate the November 17, 2017 Chancery Division order.[2]

On June 20, 2018, defendant filed an order to show cause in the Chancery Division, seeking to vacate the November 17, 2017 order that had voided the renewal lease. In support of the order to show cause, defendant submitted a certification by Stacy Cruz, the executive director of Paterson International Pre-School. Cruz attested that defendant hired its initial counsel to represent it in the Chancery Division action and was unaware of the entry of default and the proof hearing until Cruz received a copy of the November 17, 2017 order in December 2017. Cruz certified that she called the courthouse when she received the order, and that someone from the clerk's office told her "not to worry because the case had been dismissed by the [c]ourt." Cruz certified that she was unaware that the November 17, 2017 order would "survive the dismissal of [p]laintiff's complaint."

---

[2] Defendant does not appeal from any of the Special Civil Part orders.

A-5736-17T4

Plaintiff also submitted a signed letter, dated July 23, 2018, from Luisa Torres, who had been the deputy director of Hispanic Multi-Purpose Service Center until her retirement in 2013.[3] The letter explained that at one point in its history, the preschool operated under the umbrella of Hispanic Multi-Purpose Service Center, but the entities separated in 2006. The letter stated that Osorio was "the President of the Title Holding Company." According to the letter, Torres witnessed Osorio execute a lease agreement on behalf of plaintiff in 2002 for a ten-year term and again witnessed Osorio execute a ten-year renewal in 2012. Torres asserted her belief that the renewal lease was a valid document authorized by Hispanic Multi-Purpose Service Center.

On July 23, 2018, the Chancery Division held oral argument on the motion to vacate and instructed the parties to submit additional briefing. On August 3, 2018, after receiving the additional briefs and holding further oral argument, the trial court denied defendant's motion to vacate the November 17, 2017 order.

On August 10, 2018, defendant filed an application for permission to file an emergent motion to this court, which was granted. Thereafter, defendant filed an emergent motion seeking a stay pending appeal. The motion was supported

---

[3] The letter is not in the form of a proper certification. See also footnote 6 and associated text.

by a certification from Stacy Cruz. Among other things, Cruz certified that defendant's initial counsel disappeared and that defendant was unable to contact him.

Defendant also submitted a certification from Ana Osorio. Osorio certified that she was the president of Hispanic Multi-Purpose Center Title Holding Company from 2004 until 2017 and was in charge of renting out spaces in the building. She attested that plaintiff entered into a ten-year lease with defendant in 2002 and renewed the lease for another ten-year term in 2012. Osorio refuted much of Rosado's proof-hearing testimony. Osorio attested that she and Rosado had worked together for roughly twenty years at the Hispanic Multi-Purpose Center, that Rosado was aware of Osorio's authority to enter into the lease, and that Rosado knew of the lease renewal.

## II.

We begin our analysis by reviewing the legal principles that apply to motions to vacate judgments. "The decision whether to grant [a motion under Rule 4:50-1 to vacate a final judgment or order] is left to the sound discretion of the trial court, and will not be disturbed absent an abuse of discretion." Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993). An abuse of discretion occurs "when a decision is 'made without a

rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

The case law recognizes that a motion to vacate a default judgment should be viewed with "great liberality." Mancini, 132 N.J. at 334 (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div.). "All doubts . . . should be resolved in favor of the parties seeking relief." Ibid. "The reason courts take an indulgent approach towards such motions is that a default judgment deprives a party of the benefit of an adjudication on the merits." Allen v. Heritage Court Assocs., 325 N.J. Super. 112, 117 (App. Div. 1999); see also Ragusa v. Lau, 119 N.J. 276, 284 (1990) (noting that the Court Rules are "simply a means to the end of obtaining just and expeditious determinations between the parties on the ultimate merits." (quoting Tumarkin v. Friedman, 17 N.J. Super. 20 (App. Div. 1951)).

Defendant's principal contention is that the default judgment should be vacated pursuant to subsection (a) of Rule 4:50-1. To obtain relief under this subsection, defendant must show both "excusable neglect" and a "meritorious

defense."  See Guillaume, 209 N.J. at 468; Mancini, 132 N.J. at 334.  We next address these two distinct prongs.

A.

The determination of whether neglect is excusable is fact-sensitive.  See Hous. Auth. of Morristown v. Little, 135 N.J. 274, 284 (1994) (noting that "[c]ourts have applied subsection (a) adaptively when advanced as the basis for setting aside a default judgment" and collecting cases addressing excusable neglect).  "'Excusable neglect'" may be found when the default was 'attributable to an honest mistake that is compatible with due diligence or reasonable prudence.'"  Guillaume, 209 N.J. at 468 (quoting Mancini, 132 N.J. at 335); see also DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 262 (2009) ("The four identified categories in [Rule 4:-50(a)], when read together, as they must be, reveal an intent by the drafters to encompass situations in which a party, through no fault of its own, has engaged in erroneous conduct or reached a mistaken judgment on a material point at issue in the litigation.").

Of special significance to this appeal, reviewing courts have found excusable neglect arising from parties' reasonable reliance on their attorneys.  See, e.g., Goldhaber v. Kohlenberg, 395 N.J. Super. 380, 391-392 (App. Div. 2007) (finding excusable neglect where the defendant "consulted with a

11

California attorney who advised him that New Jersey did not have jurisdiction over him, and that, as a consequence, he need take no steps to defend himself."); Regional Const. Corp. v. Ray, 364 N.J. Super. 534, 541 (App. Div. 2003) (finding excusable neglect based on the defendant's mistaken assumption that an attorney, who was representing the defendant in other actions involving the same parties, would respond to a newly-filed complaint).

Furthermore, although "[m]ere carelessness or lack of proper diligence on the part of an attorney is ordinarily not sufficient to entitle his clients to relief from an adverse judgment in a civil action[,]" Baumann v. Marinaro, 95 N.J. 380, 394 (1984) (alteration in original) (quotation omitted), "sins or faults of an errant attorney should not be visited upon his client absent demonstrable prejudice[4] to the other party." Jansson v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 194. (App. Div. 1985) (reinstating a complaint where an attorney failed to respond to interrogatories and misrepresented the status of the case to the client). See also Parker v. Marcus, 281 N.J. Super. 589, 591-95 (App. Div.

---

[4] We see no demonstrable prejudice to plaintiff by our decision to require a new hearing to determine the validity of the renewal lease beyond the prejudice inherent in any reversal of a default judgment. On remand, the Chancery Division judge may, of course, issue such orders as it deems appropriate to protect plaintiff's financial interests pending final determination of the validity of the renewal lease.

1995) (vacating a dismissal where an attorney failed to appear at an arbitration hearing and to inform the client about the dismissal).

Applying these legal principles to the unusual circumstances of this case, we conclude that defendant has established excusable neglect. Defendant reasonably relied on its initial counsel to protect its interests in the course of the Chancery Division litigation. Defendant's executive director, Stacy Cruz, certified that she was informed by a court clerk that the matter had been dismissed and that she had lost contact with defendant's initial counsel. She also certified that defendant was not actually aware that default had been entered or that a proof hearing had been held. Defendant had retained another attorney to represent it in the landlord-tenant actions and Cruz believed that the new attorney had settled the matter in January 2018.

Moreover, the record reflects that before disappearing, defendant's initial counsel unsuccessfully attempted to file a consent order shortly before plaintiff's complaint was administratively reinstated in June 2017. In these circumstances, and given the complex procedural history of this ongoing dispute, it was not unreasonable for Cruz to have thought that no action was needed in the Chancery Division matter and that the preschool's initial counsel was still protecting defendant's interests in the litigation.

Plaintiff nonetheless argues on appeal that excusable neglect cannot be shown because the "failure to file an Answer to the original Chancery Complaint was based on total neglect and there is nothing excusable about it." That argument begs the question whether defendant was acting reasonably in relying on its attorney to file an answer and present a defense. See Jansson, 198 N.J. Super. at 194; Regional Const. Corp. v. Ray, 364 N.J. Super. at 541. In this instance, the attorney's "total" neglect, to use plaintiff's characterization, is reflected not just in missing a court deadline or filing an inadequate pleading. Rather, defendant's initial counsel disappeared altogether without informing his client, or opposing counsel, that he was no longer acting on defendant's behalf, leaving the preschool in the lurch in the face of an impending adverse default judgment of which the client was unaware.[5] As we noted in Jansson,

> The tension between these competing values [the interest in finality/repose and the interest in having matters adjudicated on their merits] becomes more acute when the parties are blameless and have relied upon the presumed competence and good faith of their

[5] We do not know why defendant's initial counsel terminated his representation. We do know from this record that defendant's initial counsel did not reply to important, time-sensitive correspondence from plaintiff's attorney. Even if there was a legitimate reason for defendant's initial counsel to terminate his representation of the preschool, we believe that he was obligated in these circumstances not only to advise his former client of the impending default judgment and proof hearing, but also to advise plaintiff's attorney that he no longer represented defendant.

attorneys. Undoubtedly, there are some individuals "sophisticated enough in the affairs of the world to be able to select the good from the bad among [the] mass of lawyers throughout the country." Link v. Wasbash R. Co., 370 U.S. 626, 647 (1962) (Black, J., dissenting). Unfortunately, this is not always the case. To be sure, instances of misconduct or incompetence are rare in the legal profession. When they occur, however, the financial penalties heaped upon the client are often disastrous. Against this backdrop, we believe that the sins or faults of an errant attorney should not be visited upon his client absent demonstrable prejudice to the other party. Consistent with that belief, we are compelled to reverse the trial court's order and remand for further proceedings.

[198 N.J. Super. at 194].

In sum, we are satisfied that any neglect attributable to defendant was excusable based on defendant's reasonable assumption that its attorney would not disappear without warning, without filing an answer to plaintiff's declaratory judgment complaint, and without mounting a fact-sensitive defense in support of the validity of the renewal lease that defendant had signed.

## B.

Turning to whether defendant has presented a meritorious defense, "[w]e must examine defendant's proposed defense to determine its merit." Bank of New Jersey v. Pulini, 194 N.J. Super. 163, 166 (App. Div. 1984). In this regard, "[w]here either the defendant's application to re-open the judgment or the

plaintiffs' proofs presented at the proof hearing raise sufficient question as to the merits of plaintiffs' case, courts may grant the application even where defendant's proof of excusable neglect is weak." Siwiec v. Fin. Res., Inc., 375 N.J. Super. 212, 220 (App. Div. 2005).

In the particular circumstances presented in this case, defendant appears to have a potentially meritorious argument that the purported lease was valid based upon the certification from Osorio and the letter from Torres, that, if believed, contradict Rosado's proof-hearing testimony that Osorio had no authority to enter into the lease.[6] See id. at 219 ("[A]lthough it should have been submitted in certification form, defendant did provide a meritorious explanation for the failure to close the loan. Whether the explanation is true remains to be seen."); T & S Painting & Maint., Inc. v. Baker Residential, 333 N.J. Super. 189, 192-93 (App. Div. 2000) (finding a meritorious defense based on defendant's certification that the plaintiff had breached the contract between the parties).

Ultimately, the validity of the renewal lease hinges on the credibility of potential witnesses who offer conflicting versions of the circumstances in which

_____

[6] We recognize that Torres' letter was not in the form of a certification, see footnote 3, and it appears that Osorio's certification was not submitted with the original order to show cause but rather with an emergent motion to the Appellate Division.

the renewal lease was signed. This has become a rancorous contest and we have no insight as to who is telling the truth. All that we can decide on this appeal is whether defendant was entitled to an opportunity to present its proofs to the Chancery Division. See Siwiec, 375 N.J. Super. at 220.

## III.

We turn next to defendant's assertion that plaintiff failed to properly serve notice of the final judgment of default and notice of the scheduled proof hearing. This contention provides an independent basis[7] to vacate the order invalidating the renewal lease. Rule 4:43-2(b) provides in pertinent part that "the party entitled to a judgment by default shall apply to the court therefor by notice of motion pursuant to Rule 1:6, served on all parties to the action, including the defaulting defendant or the representative who appeared for the defaulting defendant." See footnote 6. Additionally, the rule provides that when the court elects to hold a proof hearing, "[t]he notice of proof hearing shall be by ordinary mail addressed to the same address at which process was served unless the party

---

[7] We note that in addition to being a standalone legal argument, defendant's service-of-process contention supports its position regarding excusable neglect; the failure to learn about the default judgment helps to explain why the preschool did not contest plaintiff's application for declaratory judgment or appear at the proof hearing to challenge plaintiff's version of the circumstances in which the renewal lease was signed.

entitled to judgment has actual knowledge of a different current address for the defaulting defendant."

Before addressing the particular facts in this case, we stress the importance of adhering to the rules for serving notice of default judgments and proof hearings. A proof hearing is essentially a substitute for a trial – it is the means by which a court can be assured that there is a sufficient basis in law and in fact to support a final judgment. The just outcome of a proof hearing depends on the judge knowing whether material facts are disputed. Accordingly, it is well-settled that "[a] default judgment will be considered void when a substantial deviation from service of process rules has occurred, casting reasonable doubt on proper notice." Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 425 (App. Div. 2003). Even if there is actual notice of the suit comporting with due process, the default judgment must be set aside if there is a substantial deviation from service of process rules. Sobel v. Long Island Entm't Products, Inc., 329 N.J. Super. 285, 292-94 (App. Div. 2000).

We have reviewed the record before us carefully in view of these legal principles and conclude that plaintiff deviated substantially, and unjustifiably, from Rule 4:43-2(b). Plaintiff relies on the November 2, 2017 letter mailed to plaintiff's initial counsel advising him that a proof hearing was scheduled for

November 9, 2017. (Pa9). <u>Rule</u> 4:43-2(b) clearly provides that notice of the proof hearing is to be sent "by ordinary mail addressed to the same address at which process was served[,]" <u>see</u> footnote 1, not to defendant's attorney.[8]

Plaintiff nonetheless argues that "[r]espondents had every reason to believe based on [defendant's initial counsel's] prior representation that he was the attorney for Appellant's [sic] in this case, and that by notifying him Appellant's [sic] were being afforded proper Notice with respect to the hearing." In the particular circumstances of this case, the assumption that counsel continued to represent the preschool was unreasonable, and thus does not justify a substantial deviation from the manner of service prescribed in <u>Rule</u> 4:43-2(b). Plaintiff's argument on this point must be viewed in context with its contention that defense counsel's neglect was "total" and thus inexcusable.

Counsel's "total" neglect had become apparent by his failure to file an answer to the declaratory judgment complaint, and thus manifested <u>before</u> plaintiff sent the November 2 letter serving notice of the scheduled proof hearing. Plaintiff is therefore hard pressed to claim that it had "every reason to believe" that defendant's initial counsel would notify defendant of the default

---

[8] We note that the record does not reflect that defendant's initial counsel had formally entered an appearance in the declaratory judgment action.

and proof hearing.  On the contrary, there was ample reason to suspect that something was amiss with respect to the status of defense counsel's representation once he failed to respond in any way to plaintiff's warning that it would seek a default judgment if an answer was not filed within thirty days.

The reasonableness of plaintiff's assumption would be viewed in a different light if defendant's initial counsel had acknowledged, by any means of communication, that he was accepting service on behalf of his client.  The situation might also be different if defendant's initial counsel had at least acknowledged that he was still representing the preschool, since that would support a reasonable inference that he was still in contact with his client.  Here, however, there was no response at all to plaintiff's correspondence pertaining to the default judgment, including the August 23, 2017 warning letter, which suggests that defendant's initial counsel had already disappeared.

In these circumstances, we are not prepared to assume that defense counsel's silence betokened consent to a different form of service than the one prescribed by Court Rules.  Nor was it reasonable for plaintiff's attorney to make that assumption.  We therefore conclude that the manner of service chosen by plaintiff represents a substantial deviation from <u>Rule</u> 4:43-2(b), casting

reasonable doubt on proper notice and providing a basis to vacate the default judgment. <u>See</u> <u>Jameson</u>, 363 N.J. Super. at 425.

IV.

Default judgments are considered void when a substantial deviation from service of process rules has occurred, and even when the adequacy of service is not at issue, motions to vacate default judgments should be granted liberally, especially if the material facts appear to be disputed. Given the totality of the circumstances before us, we are constrained to conclude that the decision to deny defendant's motion to set aside the default judgment departs from these established policies. <u>See</u> <u>Guillaume</u>, 209 N.J. Super. 467-68. We therefore reverse the November 18, 2017 order that voided the renewal lease and remand to the Chancery Division for further proceedings to allow both parties a fair opportunity to present their proofs and arguments regarding the validity of the renewal lease. We do not retain jurisdiction.

Reverse and remand.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21

A-5736-17T4